**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| SAMSUNG AUSTIN SEMICONDUCTOR, LLC, | ) ) ) | Civil Action No. 1:23-cv-00114 |
| Plaintiff, | ) ) | |
| v. | ) ) | Jury Demand |
| FACTORY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Samsung Austin Semiconductor, LLC ("Samsung Austin") files this Complaint against Defendant Factory Mutual Insurance Company ("FM Global"), and would respectfully show the Court as follows:

## NATURE OF THE ACTION

1.      Samsung Austin operates one of the most advanced semiconductor manufacturing facilities in the world at its Austin, Texas manufacturing facility, located at 12100 Samsung Boulevard in Austin, Texas (the "Facility").

2.      Since opening in Austin in February 1996, Samsung Austin has become a global leader in advanced semiconductor process technology, manufacturing semiconductor chips that are necessary for the operation of mobile phones, tablets, automobiles, and countless other electronic devices essential to modern life and the functioning of today's global economy.

3.      Unfortunately, like many Texans, Samsung Austin sustained catastrophic losses at the Facility because of Winter Storm Uri, which hit Texas in February 2021.

4.      Although Samsung Austin took reasonable and necessary measures to protect the Facility, Winter Storm Uri's unprecedented freezing temperatures caused more than $400 million

in damages at the Facility, consisting of both direct physical damage to Samsung Austin's property, including machinery and equipment, and resulting business interruption and extra expense losses.[1]

5.     Samsung Austin purchased "all risks" commercial property insurance from FM Global, in the form of FM Global Policy No. 1066423 (the "Policy" or "FM Global All-Risk Policy"), to protect Samsung Austin against "all risks of physical loss or damage" to its property, as well as business interruption and extra expense losses arising from any physical loss or damage to its property.

6.     Samsung Austin's Winter Storm Uri-related losses all fit squarely within the scope of coverage afforded by the FM Global All-Risk Policy, and are not otherwise excluded from that coverage.  Accordingly, Samsung Austin submitted a claim for its Winter Storm Uri-related losses totaling approximately $400 million, less the applicable deductibles, to FM Global (the "Claim").

7.     Nevertheless, FM Global has wrongfully, and in bad faith, refused to honor its agreement to insure its full share of Samsung Austin's covered losses.  Rather than paying the full amount owed, FM Global has knowingly underpaid Samsung Austin's Claim by hundreds of millions of dollars, relying on plainly inapplicable exclusions and other inapplicable policy provisions in an attempt to wrongfully limit its obligations to Samsung Austin.

8.     On information and belief, FM Global's reliance on these inapplicable exclusions and provisions is part of a broader scheme employed by FM Global to underpay Winter Storm Uri claims owed to all of its Texas policyholders.

---

[1]     This amount consists of the losses that Samsung Austin has quantified and submitted to FM Global as of the date of the filing of this Complaint.  Samsung Austin anticipates that it may incur further losses, and reserves its rights to supplement its damages in the course of this litigation.

9.      FM Global's bad faith refusal to pay the full amount owed to Samsung Austin under the FM Global All-Risk Policy has forced Samsung Austin to file this action to enforce its rights.

## PARTIES

10.      Plaintiff Samsung Austin is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Austin, Texas.  The sole member of Samsung Austin is Samsung Semiconductor, Inc., which is a corporation organized under the laws of the State of California with its principal place of business in San Jose, California.

11.      Upon information and belief, Defendant FM Global is a corporation organized under the laws of the State of Rhode Island with its principal place of business in Johnston, Rhode Island.  FM Global is licensed to do business in the State of Texas and regularly conducts business in the State of Texas.

12.      FM Global may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

13.      This dispute arises out of FM Global's breach of an insurance policy it sold to Samsung Austin, a Texas policyholder, to insure property located exclusively in the State of Texas.

14.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a), because this suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

15.      At all relevant times, FM Global has been an insurance company licensed to do business in the State of Texas that sold commercial and industrial property insurance products to policyholders in the State of Texas for the purpose of insuring property located in the State of Texas.  In addition, FM Global exercises substantial, systematic, and continuous contacts with the

State of Texas by doing business in the State of Texas, insuring businesses and property in the State of Texas, and pursuing additional business in the State of Texas. Accordingly, this Court has personal jurisdiction over FM Global.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because this dispute arises out of FM Global's breach of an insurance policy issued in this judicial district, that insures property located exclusively in this judicial district, to a policyholder based in this judicial district.

## FACTS

### A.     Samsung Austin

17.     The Facility is one of the largest semiconductor manufacturing facilities in North America, supporting thousands of jobs in Austin, Texas.

18.     The semiconductor manufacturing processes take place in the Facility's fabrication units. The Facility's first fabrication unit began semiconductor production in 1998, and the second fabrication unit began production in 2007.

19.     Fabrication is a highly sophisticated and sensitive process, using advanced and proprietary technologies in highly controlled environments to create what is referred to as a "wafer," a thin slice of silicon material that is ultimately diced into individual "chips" or "dies," which in turn are used to operate digital devices such as smartphones, computers, televisions, automobiles – indeed, nearly all modern technologies.

20.     The process of creating a single wafer with working chips consists of thousands of intricate production steps and can take several months.

21.     The central production steps take place in a highly-regulated "clean room," with precise atmospheric controls necessary to produce chips free of defects that can ultimately be put to use by Samsung Austin's customers.

22.    The wafers are transported between process steps in specially sealed boxes called "front opening unified pods," or "FOUPs," with production carried out controlled environments at each step, which may include ultrapure chemicals, inert gases, vacuum, or combinations of all three in sequence.

23.    Temperature in the clean rooms is precisely regulated to protect the machinery, protect the wafers, and to avoid unwanted and potentially damaging chemical reactions.

24.    Because even the smallest microscopic particles – a dust particle, a grain of salt, or water droplet – could cause a defect rendering a chip unusable, the clean room is pressurized with filtered air to minimize any particles.  Further, human access to the clean room is limited to the extent possible to minimize the shedding of particles into the clean room environment.

25.    To ensure the constant and safe supply of electricity to the Facility, Samsung Austin granted the City of Austin an easement on Samsung Austin's property to "place, construct, operate, repair, maintain, inspect, replace or remove" an electric substation (the "Dessau Substation") at the Facility.

26.    The Dessau Substation is operated by Austin Energy, the City of Austin's publicly owned electric utility.

27.    The Dessau Substation is located at the same physical address as the Facility, and Austin Energy can only access the substation by entering the Facility and passing through Samsung Austin's security gate, which is staffed by Samsung Austin personnel.

28.    The Dessau Substation provides electricity to Samsung Austin.

29.    Samsung Austin did not transfer any property ownership rights when it granted the easement to Austin Energy.  Rather, it only transferred a nonpossessory interest that authorizes its holder to use Samsung Austin's property for only particular purposes.

30.    Samsung Austin owns the property on which the Dessau Substation is located.

**B.    Winter Storm Uri**

31.    In February 2021, Winter Storm Uri hit Texas.

32.    The storm caused record-low temperatures across Texas and was the worst freeze event that Austin, Texas, experienced since January 1949, with temperatures reaching an unprecedented low of 6 degrees Fahrenheit.

33.    By way of comparison, according to the National Oceanic and Atmospheric Administration, the average temperatures in Austin, Texas during the month of February range from an average high of 65 degrees Fahrenheit to an average low of 45 degrees Fahrenheit.

34.    On February 11, 2021, temperatures fell below freezing in Austin.

35.    By February 14, 2021, freezing temperatures began to damage the Outside Air Units located on the roof of the Facility.  The Outside Air Units were (and are) essential to the production of wafers because they regulate the conditions in the Facility's fabrication units.

36.    The Outside Air Units were designed to withstand temperatures as low as 19 degrees Fahrenheit.  Although Samsung Austin undertook reasonable efforts to insulate the Outside Air Units from damage, once temperatures dropped below 19 degrees Fahrenheit on the evening of February 14, the water running through the coils in those units froze and many of the coils began to rupture.

37.    As the coils on the roof experienced physical damage caused by the freeze, Samsung Austin lost its ability to control the conditions in its fabrication units.

38.    By the morning of February 15, 2021, the physical damage to the Outside Air Units compromised the conditions in the fabrication units.

39.    During Winter Storm Uri, Austin Energy, Samsung Austin's electricity supplier, informed Samsung Austin personnel that it did not anticipate that Samsung Austin would lose

electricity and advised that Samsung Austin would not be impacted by ERCOT firm load shed events.

40.     Despite those prior assurances that Austin Energy would maintain electricity to the Facility, at approximately 7:16 AM Central on February 16, 2021, Austin Energy notified Samsung Austin that it would be cutting power to the Facility by opening breakers at the Dessau Substation located at the Facility at 10 AM Central.

41.     The sudden termination of power had the potential for catastrophic consequences due to the complex nature of the operations at the Facility.  By way of example, a sudden loss of power risked disrupting precisely controlled chemical processes and damaging highly sensitive equipment.

42.     To protect human health and safety and to minimize damage to the equipment and products inside the fabrication units, immediately upon being advised of the imminent loss of electricity to the Facility, Samsung Austin undertook emergency measures to prepare for the imminent loss of power at the Facility and avoid any catastrophic damages.

43.     Samsung Austin further requested additional time from Austin Energy to ensure it could complete those emergency measures before power was lost.

44.     At approximately 1 PM Central, while Samsung Austin's emergency measures were still in progress, Austin Energy opened the circuit breakers at the Dessau Substation, which is located at the Facility.

45.     Opening the circuit breakers immediately stopped electricity from flowing between the Dessau Substation at the Facility and Samsung Austin's operating units; however, on information and belief, electricity remained available and continued flowing to the Dessau Substation at all relevant times.

46.     As a result of the opening of the circuit breakers, the operating units at the Samsung Austin Facility were without power from approximately 1 PM Central on February 16, 2021, until power restoration began at approximately 1:50 PM Central on February 19, 2021.

47.     To begin the power restoration process, Austin Energy closed the circuit breakers at the Dessau Substation at approximately 1:50 PM Central on February 19, 2021, at which point electricity could once again flow between the Dessau Substation at the Facility and Samsung Austin's operating units.

48.     Samsung Austin then began a controlled power restoration to the operational units at the Facility, to ensure that electricity was restored safely to protect human health and to avoid further damage to the machinery, equipment, and product at the Facility.

49.     Samsung Austin restored electricity to fabrication unit 1 on February 22, 2021, and restored electricity to fabrication unit 2 on February 23, 2021.

50.     At all relevant times, Samsung Austin was engaged in reasonable, indeed extraordinary, efforts to protect human health and welfare, mitigate its damages, and safely and expeditiously restore operations at the Facility.

51.     Samsung Austin engaged in a diligent phased reopening of the fabrication units by, among other things, (a) repairing and replacing the Outside Air Units to regain environmental control of the fabrication units; (b) reestablishing environmental control over the fabrication units to ensure the fabrication units were safe for operations and could produce usable products; (c) repairing, replacing, and cleaning production equipment and machinery inside the fabrication units to restart the manufacturing process; and (d) recovering and salvaging any wafers in production at the time of the losses.

52.     Samsung Austin suffered approximately $150 million in covered damages to its machinery and equipment, including physical damage to the Outside Air Units and physical damages sustained in Samsung Austin's fabrication units, arising from Winter Storm Uri.

53.     That physical damage further caused more than $250 million in business interruption losses through at least June 30, 2021 (measured as of the date of this Complaint), caused by, among other things, lost sales as a result of the delay in returning to normal operations and production levels following the physical damage to Samsung Austin's machinery and equipment.

54.     Samsung Austin anticipates that it may incur further lost income damages to the extent that testing of wafers in production while it was restoring operations demonstrates that the chip yield of those wafers is substantially out of specification.  Samsung Austin will seek those losses from FM Global if those losses ultimately materialize.

**C.     The FM Global All-Risks Policy**

55.     In exchange for substantial premium, Samsung Austin purchased a commercial property insurance policy from FM Global for the policy period of August 1, 2020 to September 1, 2021, in the form of FM Global Policy No. 1066423 (the "Policy" or "FM Global All-Risk Policy").   A true and correct copy of the relevant portions of the Policy is attached hereto as **Exhibit A** and is incorporated by reference.

56.     The FM Global All-Risk Policy provides $2.5 billion in insurance coverage against all risks of physical loss or damage – except as expressly excluded in the Policy – as well as time element loss resulting from physical loss or damage of the type insured.

57.     The Policy's insuring agreement provides that "[t]his Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy."

58.     The Policy's insuring agreement further provides coverage for "TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured . . . to property described elsewhere in this Policy and not otherwise excluded by this Policy . . . "

59.     Accordingly, if the Policy does not expressly exclude a particular risk of physical loss or damage to property, then that non-excluded risk triggers coverage under the Policy's main coverage grant both for the direct loss of that property and for any time element losses arising therefrom, subject only to the Policy's $2.5 billion limit of liability and any applicable deductible.

60.     The Policy defines the term "location" to mean "as specified in the Schedule of Locations."  The Schedule of Locations lists the Samsung Austin Facility as the first scheduled location, which it describes as follows: "12100 Samsung Austin Boulevard (Travis County) Austin, Texas 78754-1903 Samsung Austin Main & Cu Fab."

61.     The "TIME ELEMENT COVERAGES" under the Policy include loss of "GROSS EARNINGS."

62.     The "TIME ELEMENT COVERAGES" under the Policy also include "EXTRA EXPENSE," which is "the reasonable and necessary extra costs incurred by the Insured" of "(1) extra expenses to temporarily continue as nearly normal as practicable the conduct of the Insured's business; (2) extra costs of temporarily using property or facilities of the Insured or others; and (3) costs to purchase finished goods from third parties to fulfill orders when such orders cannot be met due to physical loss or damage to the Insured's finished goods, less payments received for the sale of such finished goods."

63.     In addition to providing broad "all-risks" coverage, the Policy's Property Damage coverage section also contains several "Additional Coverages."

64.     Those Additional Coverages, which are set forth in full in the Policy attached as **Exhibit A** and incorporated herein by reference, broaden and supplement the scope of available coverage beyond the Policy's basic grant of coverage, subject to certain "Applicable Limits of Liability/Time Limits."

65.     By their express terms, the "Additional Coverages" provide supplemental coverage and do not limit or otherwise restrict the coverage available under the Policy's main coverage grant.

66.     Pursuant to the Policy's Subscription Endorsement, FM Global insures 80 percent of any loss falling within the first $2 billion of coverage under the FM Global All-Risk Policy.

**D.     FM Global's Breach of the Policy**

67.     Samsung Austin's losses arising from Winter Storm Uri that Samsung Austin submitted as part of its Claim all constitute covered, not excluded, loss or damage under the FM Global All-Risks Policy.

68.     No exclusion in the Policy applies to preclude or limit coverage for Samsung Austin's Claim.

69.     By no later than February 18, 2021, Samsung Austin timely reported its Claim to FM Global under the Policy through Willis Towers Watson, Samsung Austin's insurance broker, and requested that FM Global pay its share of that Claim.

70.     In response, FM Global began a concerted effort to improperly attempt to minimize its coverage obligations for Samsung Austin's claim.

71.     By letter dated June 18, 2021, four months after Samsung Austin provided notice of the Claim, FM Global confirmed coverage under the FM Global Policy "for the insured damage to machinery and equipment as a direct result of the freezing temperatures."

72.     However, FM Global asserted the "lack of services" exclusion in the FM Global Policy applied to all other losses sustained.

73.     FM Global's assertion of the lack of services exclusion is meritless, a fact of which FM Global is well aware as confirmed by FM Global's own retained consultant.

74.     For example, the "lack of services" exclusion only applies where FM Global establishes that the lack of services is "caused by an event off the insured location."  However, any lack of services at the Samsung Austin Facility was the result of an event "at the insured location," *i.e.*, Austin Energy opening a breaker at the on-site Dessau Substation.

75.     FM Global's own retained expert submitted a report to FM Global confirming that the event that caused the power to go down was Austin Energy "opening circuit breakers at the subject facility."

76.     Accordingly, the lack of services exclusion could not possibly apply to limit or otherwise exclude coverage for Samsung Austin's losses.

77.     Further, even if that exclusion could apply to some portion of the loss – it cannot – the exclusion includes an exception where "the lack of such a service directly causes insured physical damage on the insured location."

78.     FM Global never even attempted to account for the exception to the exclusion, instead ignoring this clear Policy language that brings any property damage potentially caused by "lack of services" within the scope of the primary coverage grant.

79.     Based on FM Global's knowingly erroneous application of the "lack of services" exclusion, FM Global wrongfully attempted to limit Samsung Austin's recovery to the coverage available under the Service Interruption Additional Coverages, which is subject to a separate lower sublimit of liability under the Policy than that available under the Policy's main coverage grant.

80.     On information and belief, FM Global has not based its evaluation of coverage on the terms of the FM Global All-Risk Policy or the actual facts underlying Samsung Austin's losses. Instead, FM Global has applied a blanket coverage position to all Texas policyholders that asserted claims arising from Winter Storm Uri limiting such claims to the amount of coverage available under the policyholders' respective Service Interruption Additional Coverage provisions – regardless of the applicable policy language or actual facts of the respective claims – in an effort to improperly limit its overall exposure to Winter Storm Uri-related losses.

81.     On August 1, 2022, Samsung Austin, through its broker Willis Towers Watson, responded to FM Global's June 18, 2021 letter, requesting "detailed information" that led to FM Global's decision to apply the "lack of services exclusion," and limit coverage to the amounts available under the Service Interruption Additional Coverages.

82.     FM Global never provided the "detailed information" Samsung Austin requested.

83.     Although Samsung Austin provided FM Global with evidence of covered losses exceeding $400 million, less the applicable deductibles, as a result of FM Global's incorrect and unsupportable coverage positions, FM Global recognized only $126 million of Samsung Austin's Winter Storm Uri-related losses.

84.     On November 21, 2022, FM Global informed Samsung Austin it would not be making any further payments on any portion of Samsung Austin's Winter Storm Uri-related losses beyond FM Global's 80 percent share of the $126 million in losses that FM Global previously recognized.

85.     On December 6, 2022, Samsung Austin sent a letter pursuant to Section 542A.003 of the Texas Insurance Code addressing the many errors in FM Global's coverage position, demanding that FM Global reconsider its erroneous coverage position and pay its share of

Samsung Austin's claim in full, and advising FM Global that Samsung Austin would file suit to vindicate its coverage rights if it did not issue payment in full within 60 days.

86.     FM Global responded with letters from its claims handler, on December 16, 2022, and from its retained counsel, on December 19, 2022, stating that FM Global would not reconsider its coverage position.  Those letters failed to materially address the many errors in FM Global's coverage position identified by Samsung Austin – and, in fact, those letters contained additional misrepresentations of fact regarding Samsung Austin's claim.

87.     FM Global did not request any further information or inspection of the Samsung Austin Facility as permitted under Section 542A.004 of the Texas Insurance Code, confirming Samsung Austin had already provided all information necessary to adjust, and pay, the Claim in full.

88.     The Texas Insurance Code and the rules and regulations promulgated pursuant to the Code required FM Global to attempt in good faith to effectuate a prompt, fair, and equitable settlement with Samsung Austin as soon as FM Global's liability became reasonably clear.

89.     FM Global's continued refusal to promptly and equitably pay its full share of Samsung Austin's Claim, which falls directly within the clear and unambiguous coverage of the FM Global All-Risk Policy, based on plainly inapplicable policy provisions and an apparent effort to limit its exposure to all Winter Storm Uri-related claims for all Texas policyholders (regardless of the actual facts or applicable policy language), is an unfair claims settlement practice specifically prohibited by Texas law.

90.     All conditions and requirements imposed by the FM Global All Risk Policy on Samsung Austin, including but not limited to the payment of premiums, timely notice of claims, and exhaustion of deductibles, if any, have been satisfied and/or waived and/or are subject to an

estoppel or other avoidance against FM Global.  There is no legal basis for FM Global to continue to refuse to acknowledge coverage for the full amount of its share of Samsung Austin's Claim.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

91.     Samsung Austin incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

92.     The FM Global All-Risks Policy, attached as **Exhibit A** and incorporated herein by reference, constitutes a valid and enforceable contract of insurance between Samsung Austin and FM Global.

93.     Under the terms of the FM Global All-Risks Policy, FM Global promised to insure Samsung Austin "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE," including time element losses (such as lost income) "directly resulting from physical loss or damage of the type insured," unless expressly excluded by the Policy.

94.     Winter Storm Uri caused in excess of $150 million in direct physical loss or damage to Samsung Austin's Facility as well as more than $250 million in additional time element losses.

95.     Samsung Austin's Winter Storm Uri-related losses fit within the scope of coverage offered by the FM Global All-Risks Policy, and no exclusions bar or otherwise limit coverage for those losses.

96.     Samsung Austin has timely satisfied all obligations and complied with all conditions applicable under the Policy, or FM Global has waived any such obligations or conditions.

97.     FM Global has failed to honor its coverage obligations for Samsung Austin's Claim by wrongfully refusing to pay its full share of Samsung Austin's covered Claim.

98.     FM Global's refusal to pay the full amounts it owes under the FM Global All-Risks Policy constitutes a breach of the Policy.

99.     Samsung Austin has not excused FM Global's breach.

100.    As a result of FM Global's breach, Samsung Austin has been forced to retain undersigned counsel to vindicate its rights under the Policy and to pursue this coverage action.

101.    Samsung Austin is entitled to breach of contract damages in an amount to be proven at trial, including the full amounts owed under the Policy, pre- and post-judgment interest, and all reasonable and necessary attorneys' fees Samsung Austin may incur through trial and appeal pursuant to TEX. CIV. PRAC. & REMEDIES CODE § 38.001.

## SECOND CAUSE OF ACTION
### (TEX. INS. CODE § 542.060)

102.    Samsung Austin incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

103.    Texas Insurance Code Chapter 542 requires an insurer to promptly acknowledge, investigate, and pay claims.

104.    Samsung Austin timely notified FM Global of the Claim and provided FM Global with all information necessary for FM Global to investigate and pay the Claim.  FM Global assigned its own adjusters and consultants to investigate the Claim, and Samsung Austin gave those FM Global adjusters and consultants full and reasonable access to all information necessary to adjust and pay the Claim in full.

105.    FM Global's wrongful refusal to timely pay the full amount owed under the Claim constitutes a violation of Section 542.060 of the Texas Insurance Code.

106.    Accordingly, FM Global is liable for the full amount of the Claim plus interest, in addition to statutory penalty interest on the amount of the Claim, together with reasonable

attorneys' fees and costs incurred in pursuing this insurance claim, all as provided for in TEX. INS. CODE § 542.060.

### THIRD CAUSE OF ACTION
**(UNFAIR OR DECEPTIVE ACTS OR PRACTICES – TEXAS INSURANCE CODE)**

107.    Samsung Austin incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

108.    The conduct of FM Global, including its investigating, processing, and delaying or refusing payment of Samsung Austin's losses, constitutes multiple violations of TEX. INS. CODE § 541.001 *et seq.* and § 542.003.

109.    FM Global's conduct further constitutes unfair or deceptive acts or practices in the business of insurance prohibited by TEX. INS. CODE § 541.001 *et seq.*, TEX. INS. CODE § 542.003, and rules and regulations addressed by the State Board of Insurance.

110.    FM Global violated the foregoing provisions in the following particulars, among others:

(a)    By misrepresenting to Samsung Austin a material fact or policy provision relating to the coverage at issue and by misrepresenting the scope of coverage;

(b)    By failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Samsung Austin's claim after liability became reasonably clear;

(c)    By refusing to pay the full value of the Claim without conducting a reasonable, good faith investigation; and

(d)    By any and all other acts of conduct that may be uncovered or committed during the discovery phase and/or trial of this lawsuit.

111.    Among other things, FM Global has wrongfully attempted to limit coverage for Samsung Austin's Claim by asserting the application of a "lack of services" exclusion that could

not possibly apply to this loss, as confirmed by the factual conclusions reached by FM Global's own retained consultant.

112.    On information and belief, FM Global has not based its evaluation of coverage on the terms of the FM Global All-Risk Policy or the actual facts underlying Samsung Austin's losses. Instead, FM Global has applied a blanket coverage position to all Texas policyholders that asserted claims arising from Winter Storm Uri limiting such claims to the amount of coverage available under the policyholders' respective Service Interruption Additional Coverage provisions – regardless of the applicable policy language or actual facts of the respective claims – in an effort to improperly limit its overall exposure to Winter Storm Uri-related losses.

113.    FM Global's violations have caused, and will continue to cause, damages to Samsung Austin, and Samsung Austin seeks to recover its damages for this conduct.

114.    On information and belief, FM Global committed the foregoing unlawful acts and practices knowingly as defined in Section 541.002 of the Texas Insurance Code, and has demonstrated actual conscious indifference to the rights and welfare of Samsung Austin, entitling Samsung Austin to multiple damages.

115.    In refusing to timely recognize the full amount of Samsung Austin's covered claim, FM Global knew that Samsung Austin would incur and continue to incur substantial expenses despite the fact that it had insurance coverage under the Policy.

116.    Accordingly, Samsung Austin seeks recovery of multiple damages in an amount three times Samsung Austin's actual damages described above.

## PRAYER FOR RELIEF

WHEREFORE, Samsung Austin, by counsel, requests judgment against FM Global and in favor of Samsung Austin for:

(i)     Compensatory damages for breach of the Policies in an amount to be determined at trial but exceeding $75,000;

(ii)    Statutory penalty interest at the maximum rate allowed in TEX. INS. CODE § 542.060;

(iii)   Multiple damages as a result of FM Global's knowing violations of TEX. INS. CODE §541.001 *et seq.*;

(iv)    Consequential damages resulting naturally, but not necessarily, from FM Global's failure to abide by the terms of the Policy and breaches of contract and/or the other acts and omissions complained of;

(v)     All attorney's fees and costs Samsung Austin incurred to pursue its coverage rights, including its costs, attorneys' fees, and expenses incurred in prosecuting this litigation pursuant to TEX. CIV. PRAC. & REMEDIES CODE § 38.001 and TEX. INS. CODE § 542.060;

(vi)    Pre-judgment and post-judgment interest at the maximum allowable rate;

(vii)   All costs in prosecuting this litigation; and

(viii)  Any additional relief, legal or equitable, general or special, to which Samsung Austin may be justly or equitably entitled.

## <u>JURY DEMAND</u>

Samsung Austin hereby demands a trial by jury as to all issues so triable.

Dated:  February 6, 2023                    Respectfully submitted,


**REED SMITH LLP**

By:     */s/ J. James Cooper*

        J. James Cooper
        Tex. I.D. No. 04780010
        Dominic I. Rupprecht (*pro hac vice forthcoming*)
        Tex. I.D. No. 24127494
        jcooper@reedsmith.com
        drupprecht@reedsmith.com
        811 Main Street, Suite 1700
        Houston, Texas 77002
        Telephone: 713.469.3800
        Facsimile: 713.469.3899

David M. Halbreich (*pro hac vice forthcoming*)
Amber S. Finch (*pro hac vice forthcoming*)
dhalbreich@reedsmith.com
afinch@reedsmith.com
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: 213.457.8000
Facsimile: 213.457.8080

Nicholas M. Insua (*pro hac vice forthcoming*)
ninsua@reedsmith.com
506 Carnegie Center Dr., Ste. 300
Princeton, New Jersey 08540
Telephone: 609.987.0050
Facsimile:  609.520.6000

*Attorneys for Plaintiff Samsung Austin
Semiconductor, LLC*